IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 23-cv-592-GPG-NRN

THOMAS AARON YANNUZZI,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER;
MARLEY BORDOFSKY, Denver Assistant City Attorney;
AARON REBETERANO, Denver Police Lieutenant;
MIKE O'DONNELL, Denver Police Commander;
HEATHER JOSSI, Denver Police Officer;
JOE MONTOYA, Denver Police Division Chief;

    Defendants.

---

**RESPONSE TO ECF NO. 25, MOTION TO DISMISS BY DEFENDANTS AARON REBETERANO, JOE MONTOYA, AND THE CITY AND COUNTY OF DENVER**

---

    Plaintiff Aaron Yannuzzi, by and through his attorneys, Adam Frank and Cameron Bedard of the Frank Law Office LLC, respectfully submits his response to ECF No. 25. Mr. Yannuzzi requests that this Court deny Defendants' Motion to Dismiss in its entirety.

## INTRODUCTION

    In preparation for the January 20, 2021, Inauguration Day protests planned at the State Capitol, Defendants Rebeterano, Montoya, and Denver wrote, approved, and implemented an unconstitutional mass search and seizure policy and/or practice that directly led Defendant Jossi to violate Mr. Yannuzzi's constitutional rights. ECF 23 ¶¶ 1-10. The unconstitutional practice and/or policy was based on what Defendants Rebeterano, Montoya, and Denver knew was an unconstitutional interpretation of then-existing D.R.M.C. § 38-117. ECF 23 ¶¶ 59-72, 80-83.

1

According to these Defendants' interpretation of D.R.M.C. § 38-117, it was illegal for any person to carry any object in Denver. ECF 23 ¶¶ 59-72. Reasoning from this obviously unconstitutional premise, Defendant Rebeterano wrote and Defendants Montoya and Denver approved and ordered the implementation of an unconstitutional practice and/or policy under which Denver instructed its police officers that they had reasonable suspicion to stop and search any person carrying any object at a protest. ECF 23 ¶¶ 59-72, 80-83; ECF 23-1 pp. 13, 17-19; ECF 23-2 p. 2-15. Following this unconstitutional policy and/or practice, Defendant Jossi stopped and searched Mr. Yannuzzi because Mr. Yannuzzi was carrying an object – his backpack – and according to Defendants' unconstitutional policy and/or practice, this permitted Defendant Jossi to conduct a stop and search based on a claimed violation of D.R.M.C. § 38-117 and/or § 38-125. ECF 23 ¶¶ 31-49, 114-118. In this way, Defendants Rebeterano, Montoya, and Denver each personally caused the violation of Mr. Yannuzzi's constitutional rights.

Defendants' Motion to Dismiss fails to accept these well-pleaded allegations as true. While Defendants are free to deny Mr. Yannuzzi's allegations at trial, they may not do so in a motion to dismiss. *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). Because Mr. Yannuzzi's Amended Complaint and Jury Demand alleges facts that, if true, would render liable Defendants Rebeterano, Montoya, and Denver, the Court should deny their Motion to Dismiss.

## FACTUAL ALLEGATIONS SUPPORTING LIABILITY

On January 20, 2021, Mr. Yannuzzi went to Cheeseman Park to participate in a nonviolent political demonstration against the "Stop the Steal" protest being carried out by other protestors at the State Capitol. ECF 23 ¶¶ 23-24. Shortly after arriving at Cheeseman Park and meeting with some fellow protestors, Mr. Yannuzzi encountered teams of DPD tactical special operations forces clad in riot gear and wielding machine guns. ECF 23 ¶¶ 28-29. One of the DPD officers, Defendant Jossi,

2

observed Mr. Yannuzzi standing in the park wearing black clothing and carrying a backpack. ECF 23 ¶¶ 32-34. Mr. Yannuzzi had no visible weapons. ECF 23 ¶ 33. Defendant Jossi had no information that Mr. Yannuzzi had violated any law. ECF 23 ¶¶ 33-42. Mr. Yannuzzi posed no apparent threat to anyone's safety. ECF 23 ¶ 36. Without legal authority, Defendant Jossi stopped Mr. Yannuzzi, grabbed him, and searched him, violating his rights under the Fourth Amendment and article II, section 7 of the Colorado Constitution. ECF 23 ¶¶ 39-40, 48.

Defendant Jossi engaged in these actions because she was following unconstitutional orders given by her Commander, Defendant O'Donnell, to carry out a policy and/or practice of mass searches and seizures of protestors. ECF 23 ¶¶ 114-117. These orders represented the implementation of an unconstitutional mass search and seizure policy and/or practice that Denver created in anticipation of Inauguration Day protests. ECF 23 ¶ 116.

Defendant Rebeterano, a DPD Lieutenant, authored this unconstitutional mass search and seizure policy and/or practice. ECF 23 ¶¶ 57-72. He wrote both the *Denver Police Department in Coordination with Colorado State Patrol Operations Plan. Presidential Inauguration* ("Operations Plan"), ECF 23-1, and the "VMT PowerPoint," formally titled *Violence Mitigation Teams: Reducing Violence and Ensuring Peaceful Protests*, ECF 23-2. Together, the Operations Plan and the VMT PowerPoint established and described the implementation of an unconstitutional mass search and seizure policy and/or practice. ECF 23 ¶¶ 57-72.

The Operations Plan and VMT PowerPoint instructed DPD officers to stop, detain, and search protesters carrying any object, including items that are legal to possess and carry. ECF 23 ¶¶ 57-72. This policy and/or practice thereby instructed DPD officers to stop, detain, and search people without reasonable suspicion that the person had committed a crime. ECF 23 ¶ 70. Defendant Rebeterano attempted to give the unconstitutional policy and/or practice a veneer of legality by relying

3

on what he knew was an unconstitutional interpretation of D.R.M.C. § 38-117. ECF 23 ¶¶ 61-63. However, Defendant Rebeterano knew that the policy and/or practice he drafted directed DPD officers to stop people who DPD officers did not have reasonable suspicion to believe had committed a crime and to seize objects from them that were not evidence of a crime. ECF 23 ¶¶ 68-72.

Defendant Montoya, DPD's Division Chief of Investigations, was Denver's final decisionmaker concerning the adoption of Defendant Rebeterano's unconstitutional policy and/or practice. *Id.* On behalf of Denver, Defendant Montoya reviewed, approved, and authorized the implementation of Defendant Rebeterano's unconstitutional policy and/or practice. ECF 23 ¶ 83.

On Inauguration Day, Denver had DPD officers carry out the unconstitutional mass search and seizure policy and/or practice against Mr. Yannuzzi and his fellow protesters. *See* ECF 23. To facilitate the implementation, Denver established an Operations Command Post and ordered it staffed by Defendants O'Donnell and Bordofsky. ECF 23 ¶ 91-95. Denver delegated to Defendant O'Donnell the implementation of the unconstitutional policy and/or practice. ECF 23 ¶ 93. Denver had Defendant Bordofsky give real-time legal advice to Defendant O'Donnell. ECF 23 ¶ 95.

Defendants Bordofsky and O'Donnell knew it was unconstitutional to stop people based on a perceived association with a political group. ECF 23 ¶ 106. Nonetheless, acting under the authority delegated to them by Denver, Defendants Bordofsky and O'Donnell instructed officers to stop and search anyone they believed to be associated with Black Lives Matter or Antifa. ECF 23 ¶ 103-05.

Following both (a) the unconstitutional mass search and seizure policy and/or practice that Defendant Rebeterano created and Defendant Montoya approved on behalf of Defendant Denver, and (b) Denver's additional directive, created by Defendant Bordofsky and implemented by Defendant O'Donnell to stop and search anyone officers believed was associated with Black Lives

4

Matter or Anitfa, Defendant Jossi stopped, detained, and searched Mr. Yannuzzi in violation of his constitutional rights. ECF 23 ¶¶ 34-48, 99-101, 112-18.

## STANDARD OF REVIEW

There is a strong presumption against the dismissal of claims under Rule 12(b)(6). *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999). Evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (internal citation omitted). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Courts have rejected a heightened pleading standard for claims of municipal liability. *Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1210 (D. Colo. 2009). Rather, a well-pleaded claim of municipal liability is one that makes sufficient allegations to put the municipality on fair notice of the grounds for which it is being sued. *Walker v. Zepeda*, No. 1:11-cv-01242-DME-CBS, 2012 U.S. Dist. LEXIS 74386, at *14 (D. Colo. May 29, 2012).

## ARGUMENT

I. **Denver established an unconstitutional policy and/or practice authored by Defendant Rebeterano and approved by Defendant Montoya that authorized DPD officers to illegally stop, search, and detain people in violation of their constitutional rights.**

   A. **Legal standards.**

5

The Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution both guarantee a person's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Colo. Const. art. II, sec. 7. Under both, a warrantless stop, search, and/or seizure is presumptively unreasonable and therefore unconstitutional unless it falls within a specific exception to the warrant requirement. *United States v. Perdue*, 8 F.3d 1455, 1461-62 (10th Cir. 1993) (warrantless stop); *Mimics, Inc. v. Vill. Of Angel Fire*, 394 F.3d 836, 844 (10th Cir. 2005) (warrantless search); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (warrantless seizure); *People v. McKnight*, 2019 CO 36, ¶ 50 (Article II, section 7 contains same requirements). To allege sufficient facts to support a cause of action for an unlawful search or seizure, the complaint must identify the search and seizure and state facts which, if true, would establish that there was no legal justification rendering the contested action constitutional. *See Sanchez v. Bauer*, No. 14-cv-02804-MSK-KLM, 2015 U.S. Dist. LEXIS 113190, at *9 (D. Colo. Aug. 25, 2015).

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), a government entity may be liable for constitutional violations committed by subordinates. A plaintiff can make out such a claim by establishing three elements: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). The Tenth Circuit has detailed what each of these elements mean:

> A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. . . . To establish the causation element, the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right. This requirement is satisfied if the plaintiff shows that the municipality was the moving force behind the injury alleged. . . . [Regarding state of mind, a plaintiff] must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences. The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or

> deliberately chooses to disregard the risk of harm. . . . In a narrow range of circumstances, . . . deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Id.* at 770-71 (internal quotations and citations omitted); *Bd. Of Cty. Comm'rs v. Crown Castle USA, Inc.*, No. 1:17-cv-3171-RM-NRN, 2019 U.S. Dist. LEXIS 50410, at *12-15 (D. Colo. Mar. 26, 2019).

### B. Defendant Rebeterano wrote the unconstitutional policy and/or practice, personally participating in violating Mr. Yannuzzi's constitutional rights.

Mr. Yannuzzi has sufficiently pleaded that Defendant Rebeterano authored Denver's unconstitutional policy and/or practice. Anticipating Inauguration Day protests, Denver tasked Defendant Rebeterano to create a response. ECF 23 ¶ 59. Defendant Rebeterano wrote an Operations Plan outlining how DPD would handle protesters on Inauguration Day. ECF 23 ¶¶ 58-60. That Operations Plan was one part of a mass search and seizure policy and/or practice designed to be implemented against protestors. ECF 23-1. The Operations Plan Defendant Rebeterano wrote relied on an obviously unconstitutional interpretation of then-existing city ordinance D.R.M.C. § 38-117(b). ECF 23 ¶ 61. Then-existing D.R.M.C. § 38-117(b) made it illegal for a person to carry a "dangerous or deadly weapon." ECF 23 ¶ 61. The ordinance further defined "dangerous or deadly weapon" to include a number of specific weapons, as well as "any other dangerous or deadly weapon." The ordinance thus defined "dangerous or deadly weapon" as "dangerous or deadly weapon," a meaningless definition. ECF 23 ¶ 61. Seizing on this poor drafting, Defendant Rebeterano interpreted the ordinance to mean that literally any object qualified as a dangerous or deadly weapon, such that any person carrying any object in Denver was subject to a stop and search based on a potential violation of D.R.M.C. § 38-117(b). ECF 23 ¶ 62. Defendant Rebeterano knew that it was unconstitutional for police officers to stop and search any person simply because that person carried an object. ECF 23 ¶ 63. Despite this knowledge, Defendant Rebeterano authored the mass search and

7

seizure policy and/or practice directing DPD officers to act on his unconstitutional interpretation of the ordinance. ECF 23 ¶ 63.

Defendant Rebeterano also wrote the second part of Denver's unconstitutional policy and/or practice, the VMT PowerPoint. That PowerPoint instructed DPD officers and supervisors how to implement the Operations Plan. ECF 23 ¶ 64; ECF 23-2. Defendant Rebeterano's VMT PowerPoint instructed DPD officers to stop, search, and detain any protestor carrying any object. ECF 23 ¶ 65. Together, the Operations Plan and VMT PowerPoint constituted Denver's unconstitutional mass search and seizure policy and/or practice. ECF 23 ¶¶ 57-72. Defendant Rebeterano's unconstitutional policy and/or practice authorized DPD officers to ignore constitutional rights under the guise of public safety, permitting DPD officers to conduct mass suspicionless stops and searches of any protestor observed to be carrying any object. ECF 23 ¶¶ 63-65.

By authoring the unconstitutional policy and/or practice that Defendant Jossi was carrying out when she violated Mr. Yannuzzi's constitutional rights, Defendant Rebeterano personally participated in that violation. As a direct result of Defendant Rebeterano's actions, Defendant Jossi violated Mr. Yannuzzi's constitutional rights. Defendant Rebeterano was deliberately indifferent to the practical certainty that DPD officers ordered to execute the unconstitutional policy and/or practice would violate people such as Mr. Yannuzzi's right to be free from unreasonable stops, searches, and seizures.

### C. Defendant Montoya approved the unconstitutional policy and/or practice, personally participating in violating Mr. Yannuzzi's constitutional rights.

Mr. Yannuzzi has sufficiently pleaded that Defendant Montoya was personally involved in the constitutional violations alleged in Mr. Yannuzzi's Amended Complaint. Defendant Montoya was Denver's final decision-maker concerning whether to implement Defendant Rebeterano's

8

unconstitutional policy and/or practice. ECF 23 ¶¶ 80-83. In this role, Defendant Montoya reviewed and approved the implementation of Defendant Rebeterano's Operations Plan and VMT PowerPoint. ECF 23 ¶ 83. After reviewing the Operations Plan and VMT PowerPoint that directed DPD officers to stop, search, and detain protesters for carrying legal items, Defendant Montoya ordered its implementation. ECF 23 ¶ 83. Defendant Montoya thus personally participated in violating Mr. Yannuzzi's constitutional rights. ECF 23 ¶¶ 80-83. In approving and ordering the implementation of the unconstitutional policy and/or practice, he was deliberately indifferent to the practical certainty that DPD officers ordered to execute it would violate people such as Mr. Yannuzzi's right to be free from unreasonable stops, searches, and seizures. ECF 23 ¶ 151.

### D. Defendant Denver instituted the unconstitutional policy and/or practice, manifesting deliberate indifference to Mr. Yannuzzi's constitutional rights.

Mr. Yannuzzi has sufficiently pleaded facts establishing that Denver had an unconstitutional policy and/or practice that caused the violation of Mr. Yannuzzi's constitutional rights. Defendants can only argue otherwise by refusing to accept Mr. Yannuzzi's well-pleaded allegations as true. Defendants' motion to dismiss denies that Denver had a policy and/or practice authorizing DPD officers to illegally stop, search, and detain protesters carrying legal items, ECF 25 at 8. While Denver may dispute Mr. Yannuzzi's interpretation of the Operations Plan and VMT PowerPoint at trial, as relevant to the pending Motion to Dismiss, taking all allegations in the Amended Complaint as true and looking at the operative complaint in the light most favorable to Mr. Yannuzzi as the Court must, Mr. Yannuzzi has sufficiently pleaded the existence of Denver's unconstitutional policy and/or practice. ECF 23 ¶¶ 4-10; 57-72.

Turning to the elements of municipal liability, first, Mr. Yannuzzi has sufficiently pleaded that Denver had an unconstitutional policy and/or practice. ECF 23 ¶¶ 60-72. In his Amended Complaint,

9

Mr. Yannuzzi described in extensive detail the way Denver, through its designees, established, implemented, and executed a mass search and seizure policy and/or practice to be used against Inauguration Day protestors. *See* ECF 23. Denver (1) had Defendant Rebeterano write it, (2) had Defendant Bordofsky review it and give legal approval for it, (3) had Defendant Montoya make the formal final decision to implement it, (4) had Defendant O'Donnell give the orders to carry it out, and (5) had DPD line officers such as Defendant Jossi carry it out. ECF ¶¶ 23-124. Denver's mass search and seizure policy and/or practice authorized DPD officers to illegally stop, search, and detain protesters carrying any items including items that are undeniably legal to possess. ECF ¶¶ 66-71.

Second, Mr. Yannuzzi has pleaded that Denver's unconstitutional mass search and seizure policy caused the violation of his constitutional rights. Defendant Rebeterano's Operations Plan and VMT PowerPoint instructed officers to stop and seize protestors at the Inauguration Day protests without reasonable suspicion of criminal activity. ECF 23 ¶ 65. During the January 20, 2021 roll call briefing, Defendant O'Donnell used Denver's VMT PowerPoint to instruct DPD officers, including Defendant Jossi, to stop, search, and detain anyone carrying anything that appeared to be "riot materials." ECF 23 ¶ 87-88. He further instructed DPD officers that "riot materials" could be virtually anything, including water bottles, backpacks, and other "miscellaneous items" that are plainly legal for a person to possess and carry in the City of Denver. ECF 23 ¶ 88.

Following these instructions, Defendant Jossi stopped, detained, and searched Mr. Yannuzzi without a warrant or probable cause, in violation of Mr. Yannuzzi's constitutional rights. ECF 23 ¶ 120. As Defendants admit in their motion, Denver directed its officers to stop and search protestors based on the possession of legal items *prior* to observing them committing an illegal act. ECF 23 ¶ 67; ECF 25 at 7. Under Denver's unconstitutional policy and/or practice, had Mary Poppins shown up

at Cheeseman Park, Denver officers were instructed to stop, detain, search, and dispossess Ms. Poppins of her "deadly weapon" and "riot materials," her famous black umbrella.

*Compare*  ECF 23-2 at 8, *with* .[1]

Third, Mr. Yannuzzi has pleaded facts that establish Denver acted with deliberate indifference to the constitutional rights of protestors such as Mr. Yannuzzi. By instructing its officers to stop, search, and seize protestors based on observing purely legal activity, Denver, through its designees, established, implemented, and executed a mass search and seizure policy and/or practice that would inevitably lead to DPD officers unconstitutionally stopping, seizing, and searching protestors like Mr. Yannuzzi. ECF 23 ¶¶ 35-36; 48; 63; 78; 102; 151; 158.

## II. Denver, acting through its designees, Defendants O'Donnell and Bordofsky, established and implemented an unconstitutional practice of directing DPD officers to stop, search, and detain protestors based on their political beliefs.

Defendants' motion to dismiss makes no substantive argument against Mr. Yannuzzi's eighth cause of action against Defendant Denver. Because Denver has failed to argue that all causes of action against it should be dismissed, its motion must necessarily fail and Denver must remain as a defendant in this case. Despite Denver's failure to advance an argument for the dismissal of Mr.

---

[1] Ben Child, *Director of new Mary Poppins movie says it is not a remake*, The Guardian, Oct. 21, 2015, https://www.theguardian.com/film/2015/oct/21/mary-poppins-new-director-movie-not-remake.

Yannuzzi's eighth cause of action, and concomitant waiver of any such argument, in an abundance of caution, Mr. Yannuzzi will detail how he has sufficiently pleaded that claim.

### A. Legal standards.

The First Amendment of the United States Constitution and article II, section 10 of the Colorado Constitution both guarantee a person's right to freedom of association and assembly. U.S. Const. amend. I; Colo. Const. art. II, sec. 10. Peaceable assembly for lawful discussion cannot be criminalized. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982). Attending meetings for peaceable political action cannot be proscribed. *Id.* To establish a violation of the First Amendment right to associate, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Perez v. Ellington*, 421 F.3d 1128, 1129 (10th Cir. 2005).

As stated above, a plaintiff can make out a municipal liability claim by establishing: "(1) official policy or custom, (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). An official policy or custom need not be written. *Camfield v. City of Okla. City*, 248 F.3d 1214, 1229 (10th Cir. 2001).

### B. Denver's unconstitutional practice targeted individuals based on their political beliefs, violating their rights to freedom of association and assembly.

Mr. Yannuzzi's Amended Complaint sufficiently pleads each element of his claim against Denver for violating his constitutional rights to Freedom of Association and Assembly. Denver's agents violated Mr. Yannuzzi's rights under the First Amendment by following the practice Denver established through directives from Defendants O'Donnell and Bordofsky.

### 1. First Amendment violation.

First, as Mr. Yannuzzi has pleaded, he went to Cheeseman Park to engage in constitutionally protected activity: associating with like-minded individuals and assembling to protest. ECF 23 ¶ 24, 119. Advocating for his beliefs, Mr. Yannuzzi joined with others to stand up for democracy and protest against right wing threats to free and fair elections. ECF 23 ¶¶ 24, 119.

Second, as pleaded, Defendant Jossi's actions caused Mr. Yannuzzi to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. ECF 23 ¶¶ 119-124. Up to and including January 20, 2021, Mr. Yannuzzi was an active protester. ECF 23 ¶ 119. He regularly attended protests throughout 2020 because protesting was a central part of his identity. *Id.* When Mr. Yannuzzi arrived at Cheeseman Park to exercise his constitutional rights to associate and assemble to protest fascistic trends in American society, he met an overwhelming show of force from DPD officers clad in riot gear and carrying military-style assault rifles. ECF 23 ¶ 29. Within minutes of encountering these DPD officers, Defendant Jossi pointed at Mr. Yannuzzi, approached him, grabbed him, and began searching him without any reason to believe he had done anything illegal. ECF 23 ¶¶ 30-39. Defendant Jossi illegally stopping, detaining, and searching Mr. Yannuzzi chilled his willingness to engage in constitutionally protected activity; since his unlawful search and seizure, Mr. Yannuzzi has not attended another protest. ECF 23 ¶ 124.

Third, Defendant Jossi's adverse actions were substantially motivated as a response to Mr. Yannuzzi's exercise of constitutionally protected conduct. At Cheeseman Park, Defendants O'Donnell and Bordofsky learned that their undercover agents believed Mr. Yannuzzi was associated with Black Lives Matter or Antifa. ECF 23 ¶¶ 107-09. Defendant Jossi believed the same and communicated this to Defendants O'Donnell and Bardofsky. ECF 23 ¶¶ 110. Based on this

information, Defendants Bordofsky and O'Donnell directed Defendant Jossi to stop and search Mr. Yannuzzi. ECF 23 ¶ 111.

### 2. Denver's liability.

Defendant Bordofsky was an agent of Denver. ECF 23 ¶ 103. Acting with authority delegated to her by Denver, she instituted an unconstitutional practice of stopping, searching, and seizing protestors based on a perceived association with Black Lives Matter or Antifa. ECF 23 ¶ 104-06. Defendant O'Donnell carried out this practice. ECF 23 ¶ 105-11. This practice caused the violation of Mr. Yannuzzi's First Amendment rights described in Part II.B.1, *supra*. ECF 23 ¶ 103-11. By creating a practice of targeting protestors based on their beliefs, associations, and choice to publicly assemble to advocate for those beliefs, Denver acted with deliberate indifference to the constitutional rights of the assembled protestors; it rendered it inevitable that its police officers would violate the First Amendment rights of protestors such as Mr. Yannuzzi. Mr. Yannuzzi has thus sufficiently pleaded facts to support his First Amendment claim against Denver.

### III. Defendants Motion to Dismiss fails to accept the allegations in Mr. Yannuzzi's operative complaint as true.

As Mr. Yannuzzi has pleaded, Defendants' Operations Plan and VMT PowerPoint instructed DPD officers to stop, search, and detain protesters observed to be carrying virtually anything, including obviously legal items such as water bottles and umbrellas. ECF 23 ¶¶ 86-89. These documents thereby created an unconstitutional policy and/or practice that Denver ordered DPD officers to follow in responding to Inauguration Day protestors. Defendants' Motion to Dismiss argues for a hypothetical alternative interpretation of the Operations Plan and VMT PowerPoint that is contrary to what is pleaded in Mr. Yannuzzi's operative complaint. While that is a defense Denver is free to raise at trial, accepting the facts Mr. Yannuzzi pleaded as true and viewing them in the light

most favorable to Mr. Yannuzzi as the Court must, Mr. Yannuzzi has sufficiently pleaded facts to support his causes of action against Defendants Rebeterano, Montoya, and Denver for their roles in creating, approving, and implementing the unconstitutional policy and/or practice described in Mr. Yannuzzi's complaint. The Court should therefore deny Defendants' motion.

## CONCLUSION

For the foregoing reasons, Mr. Yannuzzi respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss, ECF 25.

FRANK LAW OFFICE LLC

*/s Adam Frank*
Adam Frank #38979
Cameron Bedard #52362
Frank Law Office LLC
1133 N Pennsylvania St.
Denver, CO 80203
Phone: (303) 800-8222
Fax: (303) 800-9122
adam@franklawoffice.com
cameron@franklawoffice.com

ATTORNEYS FOR PLAINTIFF

**Certificate of Service**

      I hereby certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

Clayton Ankney
clayton.ankney@denvergov.org

*/s Adam Frank*
Adam Frank
Frank Law Office LLC

16